## DELANEY *v.* THE STATE.

1. CRIMINAL LAW. *False pretense. What.* Under sec. 4701 of the Code, "the ingredients of the offense of obtaining goods under false pretense and with intent to defraud, are such that if the false pretense created the credit it is within the statute," (1 Col., 333,) but if the exercise of common prudence and caution would have enabled the party imposed upon to have avoided the imposition, it is not within the statute. It is difficult to define the offense, as clearly to distinguish the cases which do or do not fall within the general definition, and therefore the court and jury must determine in each particular case as it arises whether it comes within it or not. The "common prudence and caution" to be exercised is not such as to impose upon the party who is the victim of the imposition, such inquiry and investigation into the facts pretended, as to secure him against the possibility of imposition or such precautions as only the very cautious resort to, but there should be something in the nature of the transaction itself to show that a person of common prudence and caution could not have been imposed upon thereby.

   Case cited: McCorkle *v.* State, 1 Col., 333.

   Code cited: Se*v.* 4701.

2. *Affidavit for continuance. Alibi.* When the evidence in the bill of exceptions satisfies the Supreme Court as to the identity of the defendant, and it can see from the affidavits and from the record the most satisfactory evidence that the pretended defense of *alibi* is false, and the want of witnesses to prove it but a pretense for delay, this court will not disturb the action of the Circuit Judge in refusing to grant a continuance.

---

### FROM GILES.

---

Appeal from the Criminal Court.

ATTORNEY-GENERAL HEISKELL for State.

No counsel marked for plaintiff.

DEADERICK, J., delivered the opinion of the court.

Delaney *v.* The State.

The plaintiff in error was convicted at the January term, 1873, of the Criminal Court of Giles county, of obtaining by "false pretense" of the National Bank of Pulaski, two hundred and fifty dollars in National Bank bills.

Motions for new trial and in arrest of judgment were severally made and overruled, and defendant appealed in error to this court.

It is now insisted in his behalf that the offense proved was simply a falsehood or lie, and not a "false pretense" under the statute, as construed by this court; and that the party imposed upon did not use that degree of prudence and caution required by law to avoid the imposition.

W. F. Ballentine, president of the bank, states that sometime in July or August defendant called at the bank and represented himself to be the agent of A. D. Hopping & Wilson, of New York, manufacturers of bagging, rope, etc., and presented a card of that firm with his name, "J. H. Winston with A. D. Hopping & Wilson," etc. upon it. He professed to desire to know who of the business men of the place would be suitable as agents for the sale of the goods of his firm, and stated that his employers advised him to consult with the officers of the banks. Ballentine advised him that any one of several· firms would be proper and reliable agents. Defendant then, about eleven o'clock, left the bank. He returned at about two or three o'clock in the evening and exhibited a letter purporting to be from A. D. Hopping & Wilson, with the letter head of

that firm printed upon it. After talking some time, defendant told witness in traveling around he had gotten out of money, and handed witness a check with the firm name of A. D. Hopping & Wilson printed across the, end of it, and purporting to be drawn by that firm upon the Park National Bank of New York. Witness at first hesitated to cash the check, but on further conversation he talked so plausibly that he consented to cash it, and defendant endorsed it by writing "J. H. Winston," as his name, across it. Witness states that it was upon defendant's representation that he was the agent of A. D. Hopping & Wilson that he paid the check. It was sent to New York, and returned unpaid to the bank at Pulaski.

D. H. Wilson testified that he was a member of the firm of A. D. Hopping & Wilson, and had been for twenty-six years, and that the check was never given by any member of the firm, and none of the firm ever had anything to do with the defendant, though he had seen him in New York City, but he never was the agent of the firm or authorized to draw upon them, and the check is a forgery.

In *McCorkle* v. *State*, 1 Col., 333, sec. 4701 of the Code, under which this indictment was framed, is construed. It is thereheld that " the ingredients of the offense on obtaining the goods under false pretense and with the intent to defraud," "if the false pretense creates the credit," it is within the statute. But if the exercise of common prudence and caution would have enabled the party imposed upon to have avoided the imposition, it is not within the statute.

Delaney *v.* The State.

It seems difficult so to define the offense as clearly
to distinguish the cases which do or do not fall within
the general definition of the statute, and we must,
therefore, as held in the case cited, "see whether each
case, as it arises, comes within it." It cannot be
held that the "common prudence and caution" held
necessary to be exercised, shall be such suspicion and
distrust as to impose upon the person, who is the sub-
ject of the imposition, such inquiry and investigation
into the facts pretended as to secure him against the
possibility of imposition, or that such precaution against
deception should be adopted as only the very cautious
resort to; but that there should be something in the
nature of the transaction itself to show that a person
of common prudence and caution could not have been
imposed upon thereby. With the appliances for de-
ception used in this case, in the ordinary mode in
which business of the character pretended, is ordinarily
or frequently transacted between commercial men, and
in view of Ballentine's testimony that he did rely upon
the truth of defendant's statements, and parted with
the money of the bank on the faith of those state-
ments, we are of opinion that the facts in this case
clearly make out the offense charged.

Akin testified that defendant was in Columbia,
July 16, 1872, and had a check on the Park National
Bank, which Maj. Ingram discounted for him. There
is, however, no evidence as to this check that it was
forged, and we do not think it falls within the rule—
prohibiting upon the trial of one felony evidence as
to a distinct felony. Nor do we think the evidence

of Akin as to the identity and declarations of defendant incompetent. On the contrary, it was relevant and proper. There was, therefore, no error in overruling defendant's exceptions to Akin's testimony.

It is further insisted that the court erred in refusing a continuance upon defendant's affidavit of January term, 1873.

At October term, 1872, defendant was formally arraigned and put in his plea of "not guilty," and the cause was continued until the next term, upon the affidavit of prosecutor, and leave was given the defendant to take the deposition of six named witnesses in Louisiana, New York City and Virginia.

At January term, 1873, the defendant presented an affidavit for continuance upon the ground that he had been unable to ascertain the residence of the six witnesses named in the order of October term, 1872. In each case the residence of the witness was specified in the order. The affidavit states that affiant thought he knew the residences of the witnesses at the time the order was made, but he was mistaken, and he believes he can have their testimony by next term. It is not stated that the testimony of these six witnesses is material.

The affidavit states as a further ground of continuance that he desired to have the testimony of four witnesses residing, when he "last had information of them," one at Oakland, and the others at Glasgow, Kentucky. By these witnesses he expected to prove that he was not in Tennessee at the time the offense is charged in the indictment to have been committed;

Delaney *v.* The State.

that he did not know that this testimony was material, nor that he could obtain ██ testimony until since the last term of the court, and that he did not know of the residence or materiality of said witnesses until too late to have their evidence at this term.

The continuance was refused, the trial had, and verdict of six years confinement in the penitentiary and judgment thereon.

Upon the motion for a new trial the defendant offered his own affidavit.

He gives the names of thirty-three witnesses residing in different and distant parts of Kentucky, by whom, he states, he can prove that he was not in Pulaski nor in the State during, nor before, nor after the time he was accused of being in Pulaski, nor until he was brought there under arrest. These witnesses, it is stated, live in ten different and distant counties or towns in Kentucky, and it is highly improbable that they could all know that defendant was not in Tennessee at the time the offense was committed.

The witnesses mentioned in the order of October term, 1872, as residing in New York City, New Orleans, La., Richmond, Va., and Russell county, Va., are not mentioned as material witnesses for him in either of his affidavits.

The only defense which defendant proposed to prove by any one of his witnesses was that of an *alibi.* The record shows that five out of the six witnesses identified defendant as the party who negotiated the check. . These witnesses were intelligent business

Delaney v. The State.

men who conversed with him on business. With several of them he made arrangements for the sale of bagging and rope, and with one of these merchants he spent most of a day in Pulaski.

Not one word is asked any of the witnesses upon cross-examination as to the possibility of mistake as to the identity of the prisoner. From the evidence it is impossible to doubt his identity.

In the case of *Scales* v. *The State*, decided at the present term, where a very strong case for a continuance was presented by the defendant below, but no bill of exceptions taken showing the facts on the trial, we held that the defendant having failed to bring up the evidence by bill of exceptions, we could not see that he was injured by the refusal of the Circuit Court to grant the continuance, and we are bound to presume that the evidence if brought up would have been unfavorable to him.

If we doubted the identity of the prisoner, and did not feel a thorough conviction of the falsity of his affidavits, as well from the character of those papers themselves, as from the clear and satisfactory evidence of his identity, in the record, we would not hesitate to grant him a new trial on account of the refusal to grant a continuance.

But if from the absence of evidence we may presume it negatives the defense, or is otherwise unfavorable to the defendant, much more may we refuse to disturb the action of the Circuit Judge, when we can see from the record itself the most satisfactory evidence that the pretended defense of *alibi* is false, and the

want of witnesses to prove it but a pretext for delay.

Every defendant should have a fair and impartial trial, and it is the duty of the Circuit Judges to give them reasonable opportunity for preparing their defense ordinarily. Their affidavits for continuance are taken as true if there be nothing to contradict them in the record.

We entertain no doubt of the identity of the defendant, and that he was properly convicted under an unexceptionable charge, and we affirm the judgment.